F. M. CARSON, *as Sheriff of Smith County*, v. L. A. GOLDEN.

1. REPLEVIN ; *Value of Goods; Evidence.*   In an action of replevin for goods, wares and merchandise, taken from the plaintiff by the defendant, as sheriff, on certain orders of attachment, and held by the sheriff about two months before the trial of the replevin action, a ruling of the trial court admitting evidence from a competent witness tending to show that there would be a depreciation in the market value of that kind of goods if kept over for another season, is not materially erroneous.

2. APPRAISED VALUE—*Prima Facie Evidence.*   Where a sheriff attaches goods and appoints appraisers to appraise them, the appraised value of the goods is *prima facie* evidence of their real value as against the sheriff.

3. INSOLVENCY—*Instruction, Not Materially Erroneous.*   In an action where the question arises as to whether G. sold goods for the purpose of hindering, delaying or defrauding his creditors, or not, an instruction by the trial court to the jury that before they could find

45—36 KAS.

for the defendant they must find *that G. was insolvent*, and that he made the sale with the intent to hinder, delay or defraud his creditors, is erroneous; but where the case was tried upon the theory that G. was insolvent, and where it was an admitted fact in the case that he was insolvent, *held*, that such instruction is not materially erroneous.

*Error from Smith District Court.*

REPLEVIN by *Golden* against *Carson*, as sheriff. Judgment for plaintiff, at the April Term, 1885. The defendant brings the case here. The facts are stated in the opinion.

*Webb McNall*, and *Corn & Myers*, for plaintiff in error.

*R. M. Pickler*, and *J. R. Newell*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On March 7, 1885, L. A. Golden purchased from J. B. Griswold a stock of goods, wares and merchandise, situated in Cedarville, Smith county, Kansas, for which he paid $3,000, in cash. On March 10, 1885, F. M. Carson, the sheriff of Smith county, levied certain attachments upon these goods, as the property of Griswold, and took them into his possession. On March 20, 1885, Golden replevied the goods from Carson, but Carson still retains them in his possession. On May 1 to 5, 1885, a trial was had in this replevin action before the court and a jury, and the jury found generally in favor of the plaintiff and against the defendant, and found that the goods were worth $2,356.02, and found the damages for the unlawful detention thereof to be $250. On May 6, 1885, the defendant moved for a new trial, which motion was overruled, and on the same day judgment was rendered in favor of the plaintiff and against the defendant, in the alternative for the possession of the property, or for the value thereof, to wit, $2,356.02, in case a return could not be had, and for the damages assessed by the jury, to wit, $250, and for costs of suit, taxed at $115.60. The defendant, as plaintiff in error, brings the case to this court for review.

The plaintiff in error claims that several errors were com-

mitted by the court below, which we shall consider in their order.

I. The plaintiff in error, defendant below, claims that the court below erred in admitting the evidence of T. W. Rea to prove the amount of damages sustained by the plaintiff below, on the ground that the damages sought to be proved by the testimony of this witness are too remote and uncertain to form the basis of any recovery. The testimony objected to is testimony tending to show that a depreciation in the market value of goods like those in controversy would ensue if carried over from one season to another, and that the depreciation would be from 25 to 40 per cent. The witness testified that he had had two years' experience, and had knowledge concerning these matters; and he also testified in detail with regard to the depreciation of the separate kinds of goods, as for instance, laces, ribbons, gloves, shirts, drawers, flannels, cheviots, hats, caps, winter goods, etc. The witness did not pretend to testify that any of the goods would be kept over for another season, or whether they would or not. They were levied upon by the sheriff on March 10, 1885, while this trial was had on May 1 to 5, 1885, and it might be that none of the goods would be kept over; but still they might, or at least some of them might, for the unlawful detention of all of them from March 10, 1885, to May 5, 1885, or longer, might cause some of them to be kept over for another season. Besides, this evidence was not introduced for the purpose of fixing conclusively any particular amount of damages, but was introduced merely for the purpose that the jury might take it into consideration in determining what might be the proper amount of the damages. While the question is a close one as to whether this testimony should have been admitted or not, still we are inclined to think that the court below did not commit any material error in admitting it.

II. The plaintiff in error, defendant below, further claims that the whole of the evidence taken together is not sufficient to sustain the verdict of the jury, either as to damages or as to the value of the goods. We think there was ample evidence

as to both.   The plaintiff's being deprived of the use of the
goods for two months or more, would be some evidence of dam-
age, and the removal from one place to another would also be
evidence of damage, and their being boxed up and kept in
boxes, as it was shown they were in this case, would also be evi-
dence of damage; and also, the evidence of Rea would be some
evidence of damage.   As to the value of the goods, the plaintiff
below paid $3,000 for them, and believed they were worth
fully that amount.   Griswold claimed that they were worth
more than that amount.   The appraisers, appointed by the
sheriff to appraise them when the sheriff levied the attachments
upon them, appraised them at the amount which the jury
finally found them to be worth, to wit, $2,356.02.   This
amount the appraisers believed was the original cost price; but
probably the value of the goods at Cedarville was more than
the cost price.   We think that the appraised value was at least
*prima facie* evidence of the value of the goods as against the
sheriff; and if he claimed that the goods were not worth that
amount, it devolved upon him to show it.   There was no evi-
dence tending to show that the goods were worth less than the
jury found them to be worth.

   III.   It is also claimed that the court below erred in instruct-
ing the jury that before they could find for the defendant they
must find that Griswold was insolvent, and that he made
the sale with the intent to hinder, delay or defraud his cred-
itors.   Of course this instruction is erroneous, for it is not nec-
essary that Griswold should have been insolvent if he made
the sale with the intent to hinder, delay or defraud his cred-
itors; but as the whole case was tried upon the theory that
Griswold was insolvent, and as it seems to be an admitted fact
in the case that he was insolvent, the instruction was not ma-
terially erroneous.   The jury must necessarily have found that
Griswold was insolvent, and then the only question left for
them to find was whether the sale was made with the intent
to hinder, delay or defraud his creditors, or not.

   IV.   It is also claimed that the court below erred in instruct-
ing the jury that if Griswold and Golden acted in good faith,

the plaintiff should recover. Now the court did not so instruct, or at most did not so instruct in terms; but as all the other essential facts for a recovery had unquestionably been proved, we think that such an instruction would not have been erroneous.

The judgment of the court below will be affirmed. ·

All the Justices concurring.