THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY
COMPANY V. WILLIAM WIMMER.

No. 14,402.. (84 Pac. 378.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Passenger—Findings and Verdict.* In
an action by a passenger against a railway company to re-
cover for injuries which it is claimed were caused by the
negligence of the company in starting its train without giv-
ing him sufficient time to get off in safety, where the jury
find generally for the plaintiff, a special finding by the jury
that the train stopped the usual and ordinary length of time
will not warrant the court in rendering judgment for the
railway company *non obstante veredicto.*

2. ——— *Time to Alight from a Train—Question for the Jury.*
In such a case, where the jury in answer to special questions
find that the train stopped about a minute, which was the
usual and ordinary stop at the station where the injury oc-
curred, and that it ordinarily takes passengers about a min-
ute to leave a train, the court cannot say that the time was
sufficient. The time required to leave a train depends upon
the circumstances. Whether the stop was reasonably suffi-
cient under the circumstances in evidence was a question for
the jury to determine.

3. ——— *Duty to Passenger—Limitation.* The duty which a
railway company owes to a passenger to exercise the highest
degree of care for his safety which is reasonably practicable
does not cease until the passenger has reached his destination
and left the train.

Error from Smith district court, RICHARD M. PICK-
LER, judge. Opinion filed January 6, 1906. Affirmed.

*M. A. Low, W. F. Evans,* and *Paul E. Walker,* for
plaintiff in error.

*E. S. Rice,* and *Mahin & Mahin,* for defendant in
error.

The opinion of the court was delivered by

PORTER, J.: William Wimmer was injured in alight-
ing from a train of plaintiff in error at Athol, in Smith
county. He brought this action for damages and re-

Railway Co. v. Wimmer.

covered a judgment for $1999, from which the railway company brings this proceeding in error. Mr. Wimmer's ticket was from Alta Vista to Athol, and the train upon which he was a passenger reached Athol at three o'clock on the morning of June 23, 1903. He was between seventy-nine and eighty years of age. He had no luggage except a valise, and was occupying a seat at the rear of the smoking-car. As the train approached the station it slowed up, and Mr. Wimmer inquired of the train porter and was told that it was his station. He testified that he waited until the train stopped, but no longer, and then got off as fast as he could; that he had his grip in his right hand, and held to the railing with his left hand; and that while in the act of stepping from the lower step the train started, throwing him off, and he fell on his left hip and side upon the cinder walk. It was dark at the time and there were no lights. The fall fractured the left thigh-bone near the hip-joint, leaving the leg an inch short and the muscles of the leg somewhat shrunken. Mr. Wimmer's son, who was at the station to meet him, reached the old gentleman just after the latter fell to the ground.

It is contended by plaintiff in error that the court should have sustained a demurrer to the evidence because no attempt was made to show that the train was started in a negligent manner, and because the proof showed that it started up slowly. This contention is based upon the claim that the petition contained two separate allegations of negligence: (1) That the train was not stopped a sufficient length of time; and (2) that it was started in a negligent manner. There was, however, but one act of negligence charged—the starting of the train without giving plaintiff sufficient time to get off safely. That the demurrer should have been overruled seems so clear as not to require the citation of authorities.

The claim that the court should have directed a verdict is based upon practically the same reasons—that

is, that plaintiff admitted that the train started slowly, and the further fact, brought out in the testimony of the engineer, a witness for defendant, who said the train made a slow, gradual start, in the ordinary way. But none of this testimony precluded plaintiff from a recovery upon the negligence of which complaint is ·made.

The jury, in answer to special questions submitted by the railway company, made the following findings:

"(1) Ques. What time of the day, June 23, 1903, did the accident occur? Ans. About three o'clock in the morning.

"(2) Q. What was the distance from where plaintiff was sitting in said car to the lower step of said car? A. About seven or eight steps.

"(3) Q. What part of the car was plaintiff sitting in with reference to the car door that he went out of the car to get off? A. Rear end.

"(4) Q. How long did the train stop, on which plaintiff was riding, at Athol, Kan., on June 23, 1903? A. About a minute.

"(5) Q. Did the train start slowly and gradually? A. Yes.

"(6) Q. Was the plaintiff told before the train stopped that the next station was Athol? A. Yes.

"(7) Q. Did the train make the usual and ordinary stop at said station of Athol? A. Yes.

"(8) Q. Was there any baggage unloaded from said train while it stopped at Athol? A. Yes.

"(9) Q. How many passengers got off of said train at Athol on June 23, 1903? A. Three.

"(10) Q. How long does it take for passengers to leave a train ordinarily? A. About a minute.

"(11) Q. In what car was plaintiff riding? A. Smoker.

"(12) Q. In what part of car was he riding? A. Rear.

"(13) Q. From what platform of the car did he alight? Was it forward or rear? A. Rear."

"(15) Q. Did the train start with a lurch or jerk? A. No.

"(16) Q. Did the plaintiff know the train was approaching Athol before it stopped? A. Yes.

"(17) Q. Did the porter or some one of the train-crew inform the plaintiff in answer to his question as

the train was approaching the station of Athol that the next stop was Athol? A. Yes, by some one supposed to belong to the train-crew.

"(18) Q. Did the plaintiff sit in the last seat of the car next to the door by which he left the car? A. Yes.

"(19) Q. How many passengers did the conductor of the train on which plaintiff was riding have for Athol? A. Three.

"(20) Q. How many persons alighted from the train before the conductor signaled the engineer to proceed out of town? A. Two or more.

"(21) Q. Were there three persons standing by the side of the train when the conductor signaled the engineer to go ahead? A. Three or more."

It is urged that the court erred in refusing to render judgment in favor of defendant upon these findings. The main contention of plaintiff in error is that by proof that the train made the ordinary stop at this station the burden was placed upon the defendant in error to show that by reason of some peculiar or particular circumstances the ordinary stop was not sufficient. On the contrary, it is contended that where the passenger shows he was without fault, that he made no unnecessary delay but attempted to get off as quickly as he could, and was not given sufficient time to do so safely, and was injured by reason of the train starting without giving him enough time to alight, he is entitled to recover. Plaintiff in error cites *Strauss v. The Kansas City, St. Joseph & Council Bluffs Railroad Company*, 75 Mo. 185, as follows:

"If the train was stopped a sufficient length of time to enable plaintiff to conveniently alight, and without any fault of the company's servants he failed to do so, and the conductor, not knowing and having no reason to suspect that plaintiff was in the act of alighting, caused the train to start while he was so alighting, then the company would not be liable."

This is cited in support of the proposition that if the train stopped the ordinary length of time the railway company would not be liable. The authority does

not bear out the contention of plaintiff in error. Whether the train stopped that night at Athol a *sufficient* length of time to enable defendant in error by the exercise of ordinary care and diligence to get off in safety was the very question to be determined by the jury. The case of *C. B. & Q. R. Co. v. Landauer,* 36 Neb. 642, 54 N. W. 976, cited by plaintiff in error, is an extreme one, and in our opinion the dissenting opinion by Chief Justice Maxwell states the law in accordance with the weight of authorities. Some courts hold the law to be that the train must be stopped a reasonable length of time. In the case of *Harris v. G. C. & S. F. Ry. Co.,* 36 Tex. Civ. App. 94, 80 S. W. 1023, it was held that when this is done, and the train started properly, the railway company is not liable even though the trainmen might have discovered the dangerous position of the passenger.

The evidence in this case upon the part of the trainmen was that the train stopped about a minute. The jury made a finding to that effect. In order to warrant the court in rendering judgment upon the findings it must have declared, as a matter of law, that to stop this train at the time and place and under the circumstances in evidence about a minute was a sufficient time. This no court would be justified in doing, nor could the court say that because the jury found that the train stopped the usual length of time to permit passengers to get off and on the train, and to load and unload baggage and express matter, the time was sufficient. Whether the stop was reasonably sufficient was for the jury to determine, and by their verdict they found that on this occasion it was not.

In *Luse v. Railway Co.,* 57 Kan. 361, 364, 46 Pac. 768, the jury found that the train stopped the usual length of time to permit passengers to get off and on, and the court granted a motion for judgment in favor of the railway company *non obstante veredicto.* This court, in reversing the case, said:

"The findings show that the defendant was guilty

of ordinary negligence in starting its train before the plaintiff had time to alight therefrom, and that she exercised due care in attempting to leave it and in stepping therefrom just as it was starting and before she had knowledge that it was in motion. The care of her babe and the entry and departure of other passengers retarded her egress, but the jury must have found that she was not at fault for the delays occasioned thereby.

"It is the duty of a railroad company to afford a sufficient time to passengers to alight in safety by the exercise of reasonable care and diligence on their part. . . . The mere fact that the train stopped the usual length of time is not sufficient to show negligence of the plaintiff nor due diligence of the defendant; for the circumstances may have required a longer stop on that day than usual, and it was a question for the jury to determine whether the stop was reasonably sufficient or not."

In the above case the court quotes approvingly from *Keller v. Sioux City & St. Paul R. Co.*, 27 Minn. 178, 6 N. W. 486, the rule laid down by Chief Justice Gilfillan, as follows:

"When the cars stop at a passenger's place of destination, it is his duty to leave the car without unnecessary delay, and the company's to give him a reasonable opportunity to do so with safety. The exact length of time to be given must depend very largely upon circumstances. . . . It certainly would not be permissible for them to be so reckless of the lives and limbs of passengers as to start the trains when they know, or with reasonable care might know, that passengers are in the act of alighting." (Pages 181, 182.)

In *Washington & Georgetown R'd v. Harmon*, 147 U. S. 571, 13 Sup. Ct. 557, 37 L. Ed. 284, it was said:

"A railway company being bound to deliver a passenger, its failure to stop long enough to enable him to alight with safety is a neglect of duty which involves liability for injuries resulting therefrom."

(See, also, *A. T. & S. F. Rld. Co. v. Hughes*, 55 Kan. 491, 498, 40 Pac. 919; *Brooks v. Boston & Maine Railroad*, 135 Mass. 21; *Passenger Railway Co. v. Stutler*, 54 Pa. St. 375, 93 Am. Dec. 714; *McDonald v. Long*

*Island R. R. Co.*, 116 N. Y. 546, 22 N. E. 1068, 15 Am. St. Rep. 437; *Cullar v. M. K. & T. Ry. Co.*, 84 Mo. App. 340.) It is clear, therefore, that the court did not err in denying the motion for judgment upon the special findings.

Complaint is made that certain instructions requested by defendant were refused. These instructions were not signed by the party asking for them, as required by section 275 of the civil code (Gen. Stat. 1901, § 4722), and the refusal is not a ground of error. (*Douglass v. Geiler*, 32 Kan. 499, 4 Pac. 1039; *Tays v. Carr*, 37 Kan. 141, 14 Pac. 456; *Morisette v. Howard*, 62 Kan. 463, 63 Pac. 756; *Craig et al. v. Frazier et al.*, 127 Ind. 286, 26 N. E. 842.)

We have examined the instructions given and find no error in them. Instruction No. 7 is one which is complained of as especially erroneous. The particular part of the charge objected to is as follows:

"A railway company in the conduct and management of its train is required to employ competent agents who will faithfully perform their respective duties and use such means and foresight in providing for the safety of passengers as persons of the greatest care and prudence usually exercise in similar cases, and this duty continues until the passenger reaches his destination and has alighted from the train."

This instruction states the law correctly. It cannot be that the duties which a carrier owes to a passenger cease before the passenger has left the train. In *Texas & Pacific Ry. Co. v. Miller*, 79 Tex. 78, 15 S. W. 264, 23 Am. St. Rep. 208, 11 L. R. A. 395, a similar instruction was held proper. The court in that case said: "We are of the opinion that in reference to the movement of a train at a station, as well as on the journey, the degree of care declared by the charge is required of all passenger carriers." In *Pennsylvania Co. v. McCaffrey*, 173 Ill. 169, 50 N. E. 713, the syllabus reads: "A carrier must use the highest degree of care which is reasonably practicable to provide its passengers with a safe passage from the train." (See,

also, *The Terre Haute and Indianapolis R. R. Co. v. Buck, Administratrix,* 96 Ind. 346, 49 Am. Rep. 168; *Leggett v. Railroad Co.,* 143 Pa. St. 39, 21 Atl. 996; *North Chicago St. R. R. Co. v. Cook,* 145 Ill. 551, 33 N. E. 958; 6 Cyc. 611, 612, and cases cited.) The time required to leave a train depends upon the circumstances.

"For instance, a longer time would be required when there are many passengers to alight than when there are but few; in a dark night, with the landing-place badly lighted, than when there is full light; at a difficult place to alight, than where it is easy. And as railroad companies usually carry not merely the vigorous and active, but also those who, from age or extreme youth, are slower in their movements than vigorous and active persons, the time of stopping is not to be measured by the time in which the latter may make their exit from the cars, but by the time in which the other class may, using diligence, but without hurry and confusion, alight." (*Keller v. Sioux City & St. Paul R. Co.,* 27 Minn. 178; 5 A. & E. Encycl. of L. 577.)

This instruction, of course, is to be considered in connection with the charge generally, in which the jury were instructed fully as to contributory negligence and that if plaintiff had sufficient time to get off in safety and did not do so, but negligently remained upon the train until it started, and then attempted to get off and was injured, he could not recover. One of the trainmen in this case testified that it takes from ten to fifteen seconds for a passenger to leave a car under ordinary circumstances. This might be true in broad daylight, as to some passengers. It frequently happens that passengers in their haste are out upon the platform before the train comes to a stop, and step off at once. In this case it was at three o'clock in the morning, in the dark, with no lights at the station, and the passenger was an old man, eighty years of age. To say that he could or should have gotten off in less than one minute seems, under the circumstances, hardly reasonable. Neither the conductor nor the

porter of the train was near the place when he attempted to alight. The conductor was at the rear of the chair-car, next the smoking-car, and the porter was at the rear of the train. None of the trainmen was aware that a passenger had been injured until informed of it next day.

Under the circumstances the jury seem to have been warranted in finding that plaintiff was not afforded sufficient time in which to leave the train safely, and that his injuries resulted therefrom. The judgment is affirmed.

All the Justices concurring.